UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------X
**ENRIQUE RIVERA**,

                Petitioner,        **TRAVERSE**

                                               **15 CV 2657 (WFK)**

   - against -

**THOMAS GRIFFIN**,

                Respondent.
------------------------------------X

## INTRODUCTION

I, **ENRIQUE RIVERA**, declares under the penalties of perjury, pursuant to **28 USC §1746**, that the contents of this **TRAVERSE** Reply in the above matter, is true and correct, and affirm as same.

## DISCUSSION

1. Petitioner, **Enrique Rivera**, by this Traverse, reply to the allegations of respondent in their opposition to petitioner's writ of <u>habeas corpus</u>, pursuant to **28 USC 2254**, arguing that (a) the trial court erred by refusing to submit second-degree manslaughter as a lesser-included offense of the murder charged, (b) the sentence imposed was excessive, (c) his pretrial, statement were coerced, (d) he was denied a fair trial by, alleged, delayed disclosure of <u>Brady</u> material, (e) he is actually innocent.

2. Rivera contends that, the petition is governed by section **2254** of the United States Code as it was amended by, the Antiterrorism and Effective Death Penalty Act of 1996

1

("AEDPA"). The Act provides for federal habeas relief when a "person in custody pursuant to the judgment of a State Court ... is in custody in violation of the Constitution or laws or treaties of the United States," **28 USC §2254(a)**, he subject to certain conditions.

3. AEDPA limits federal habeas relief a state evidentiary ruling is generally a matter of state law, as well as other federal constitutional and statutory rights. Two cases involving state court's decision: (1) contravened clearly established federal law, as determined by the Supreme Court, or (2) was based on an unreasonable determination of the facts. See **28 USC §2254(d)(1)-(2)**. Although "this standard is difficult to meet" See **Lewis v. Connecticut Com'r of Correction**, 975 F.Supp.2d 169 (D. Conn. 2013), aff'd 786 F.3d 176 (2d Cir. 2015); **Alvarez v. Ercole**, __ F.Supp.2d __ (S.D.N.Y. 2012), aff'd 763 F.3d 223, 229 (2d Cir. 2014), quoting **Harrington v. Richter**, 562 US 86 (2011), **Cullen v. Pinholster**, 131 S.Ct. 1388, 1398 (2011), in which federal habeas corpus review of state criminal conviction (as currently structured) cannot catalyze reform given the many procedural obstacles that prevent a pro se petitioner from getting into federal court. . .

### 'AEDPA' Would Not Bar Granting Writ

4. A district court may grant writ of habeas corpus to a state prisoner on a claim that the decision was "adjudicated on the merits" in state court if it concludes that the adjudication of the claim:

2

(i) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court of the United States, or

(ii) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State Court proceeding; **28 USC §2254(d)(1)-(2)**, see also e.g., **Brown v. Alexander, 543 F.3d 94, 100 (2d Cir. 2008)**. A district court must assume that all factual determinations made by the state court were correct unless the petitioner rebuts those findings by clear and convincing evidence, **28 USC §2254(e)(1)**; see also **Bierenbaum v. Graham, 607 F.3d 36, 48 (2d Cir. 2010)**, citing **Lewis v. Connecticut Com'r of Correction, 786 F.3d 176, 187 (2d Cir. 2015)** affirming grant of writ of habeas corpus).

5. Petitioner concedes to the factual allegations that have been referenced to by the respondent in the introductory statements on pgs. 1-8 and all of the factual and legal background as stated. Petitioner objects to the remainder of the opposition filed by the Assistant District Attorney Solomon Neubort ("ADA Neubort"). The record of the State Court proceedings has been provided by the respondent in support of their contentions made in opposition to the matter herein. Furthermore, the petition should not be denied not be denied as the respondent contends in their filed opposition.

6. The issues that are not addressed in the memorandum of law are in no way being conceded, the petitioner's trial

3

will rely on the arguments established in the appellate brief. This Court has all of the records regarding such before them and can easily make a determination based on the arguments presented tot he appellate court. Petitioner has shown that an error of state law occurred at the trial level that was so egregious that it could be seen to violate petitioner's more general right to a fair trial. The state trial court's evidentiary ruling rises to the level of a federal constitutional claim. Indeed, federal courts are empowered to correct erroneous evidentiary rulings by state courts. See **Alvarez v. Ercole, 763 F.3d 223-230 (2d Cir. 2014)** (affirming grant of writ of habeas corpus) ("[C]ombinging the standard for restricting cross-examination with the AEDPA standard, in order to grant [a] habeas petition, we would have to conclude not only that the trial court abused it 'broad discretion' by precluding cross-examination but also that the [state appellate court] could not reasonably have excludable the trial court properly applied 'standard rule of evidence'").

### EXHAUSTION

7. Here, based on the record before the Court, it appears that the Petitioner has exhausted his state court remedies. The Petitioner presented his constitutional challenges to, <u>inter alia</u> that: (1) the trial court erred in failing to submit manslaughter in the second degree as a lesser included offense, and (2) the sentence was harsh and excessive. In a decision dated November 27, 2012, the

4

Appellate Division, Second Department affirmed petitioner's conviction See, **People v. Rivera**, **100 A.D.3d 658 (2d Dept 2012)**. Leave to appeal to the Court of Appeals was also denied **People v. Rivera**, **23 N.Y.3d 112 (2014)**.

8.  Proceeding pro se, petitioner, in papers dated June 11, 2014, moved pursuant to NY Crim. Proc. Law §440.10 motion to set aside his judgment of conviction. By decision and order dated September 4, 2014, petitioner's motion to vacate judgment was denied. The Appellate Division, Second Department denied leave to appeal, **People v. Rivera**, __ **A.D.3d** __ **(2d Dept 2015)**, lv denied, __ **N.Y.3d** __ **(2015)**. All available state appellate courts and the state court's adjudicated those claims on the merits. Petitioner has presented both the factual and legal basis on his federal claims asserted in the habeas petition to the highest court of the state **Galdamez v. Keane**, **395 F.3d 68, 73 (2d Cir. 2005)**, **Morgan v. Bennet**, **204 F.3d 360, 369 (2d Cir. 2000)**, **Jones v. Vacco**, **126 F.3d 408, 413 (2d Cir. 1997)**.

### STANDARD OF REVIEW OF STATE COURT DETERMINATION

9.  Under AEDPA, the district court should first determine whether there is "clearly established" law governing the case at bar. See **Carey v. Musladin**, **549 US 70, 74-77 (2006)**. Law is "clearly established" when Supreme Court precedent unambiguously provides a "controlling legal standard" **Panetti v. Quaterman**, **551 US 930, 953 (2007)** "[C]learly established law should be construed narrowly. See **Wright v. Van Pattern**, **552 US 120, 125 (2008)**, **Musladin**, 549

5

US at 76. Nevertheless, "AEDPA does not 'require state and federal courts to wait for some nearly identical factual pattern before a legal rule must be applied'. . . The statute recognizes, to the contrary, that even a general standard may be applied in an unreasonable manner" **Panetti**, 551 US at 953 (quoting **Musladin** 549 US at 81 (Kennedy J., concurring). Petitioner submits, with these standards in mind, that the Court should analyze the merits of the Petitioner's claims in all respects.

## MEMORANDUM OF LAW

10. Petitioner submits this memorandum of law in support of the writ of habeas corpus pursuant to **28 USC §2254(a)**, Petitioner is incarcerated pursuant to the judgment.

## STATEMENT OF FACTS

11. The facts which provide the basis for the arguments contained within this memorandum of law have already been detailed in respondent's affidavit submitted herewith and in support of the instant traverse reply. In the interest of brevity, petitioner does not reprint them herein. Instead, petitioner incorporates those facts into his memorandum of law by reference, and realleges as fully as if set forth here.

## ARGUMENT

**PETITIONER WAS DEPRIVED OF DUE PROCESS AND HIS RIGHT TO FAIR TRIAL WHERE THE PRETRIAL STATEMENT SHOULD HAVE BEEN SUPPRESSED AND THERE WAS A DELAYED DISCLOSURE OF BRADY MATERIAL, AND HE IS ACTUALLY INNOCENT.**

12. Petitioner in this instant matter contends as he did

on most recent collateral attack on the judgment: (a) his pretrial statements were coerced, (b) he was denied a fair trial because the People allegedly delayed disclosure that a witness who did not testify at trial had recanted, and (c) he was actually innocent. Where, however, "the state court summarily denied without a hearing [petitioner's] §440.10 motion to vacate. Because petitioner has raised new claims of error in his CPL §440.10 motion, which involve off-the-record facts and therefore could not have been raised on direct appeal, his claims are not procedurally barred by CPL §440.10(2)(c). Both state and federal reviewing courts will review the motion court's factual findings more deferentially if they are made following a hearing. See **28 USC §2254(e)(1)** (state court findings of fact are presumed correct in federal court and presumption may be rebutted only by clear convincing evidence), **Wilson v. Mazzuca, 570 F.3d 490 (2d Cir. 2009)** (highly deferential standard of review applies to state court claims adjudicated on the merits, even if federal habeas court conducts its own evidentiary hearing).

13. Certainly, respondent's claims cannot obscure one fundamental point: This case is the functional equivalent of **Martinez v. Ryan, 132 S.Ct. 1306 (2012)**, expanded the cause-and-prejudice exception to procedural default - he was faced with a lack of effective state postconviction appellate counsel to help him with claims that involve a mix off-the-record: (1) the government's delayed disclosure of information for Serrano and Cordova violated **Brady**. Mr. Rivera's counsel was not given

7

realistic opportunities to expand their trial records on direct appeal. As a result, claims that require extra record development are typical reserved for state collateral review. It is unfair to demand that pro se petitioners overcome the harshness of their imprisonment at the same time their challenge the wrongfulness of their convictions. Non one should be forced to argue their cause from he seat of hardship. See **Trevino v. Thaler**, 133 S.Ct. 1911, 1915, 1918-21 (2013); **Ha Van Ngugen v. Curry**, 736 F.3d 1287, 1296 (9th Cir. 2013) (holding that Martinez extends to the Sixth Amendment, ineffective-assistance-of-appellate-counsel claim).

14. Petitioner conviction rests entirely on the false accusation, official misconduct, mistaken witness identification, false or misleading forensic evidence, and false confession. See **Mendez v. Artuz**, 303 F.3d 411 (2d Cir. 2002); **Ortega v. Duncan**, 333 F.3d 102 (2d Cir. 2003), **Young v. Conway**, 698 F.3d 69 (2d Cir. 2012); **Rivera v. Fischer**, 780 F.3d 529 (2d Cir. 2015). The writ of habeas corpus continues to play a vital role in vindicating injustices. See **Lewis v. Connecticut Com'r of Correction**, 786 F.3d 176, 190-191 (2d Cir. 2015) (internal citations omitted) (affirming grant of writ of habeas corpus).

15. It is submitted that, petitioner made "a reasonable attempt, in light of the information available at the time, to investigate and pursue claims in state court" before bringing his federal habeas petition. **Williams** 529 US at 435, he cold not obtain the necessary documents to properly argue the case,

8

particularly when he was appearing pro se - in which lawyer recited facts into the record under the guise of questioning a non-responsive witness - received the Supreme Court's disapproval in **Douglas v. Alabama**, 380 US 415, 416-17 (1965) ("[E]ffective confrontation of Loyd was possible only if Loyd affirmed the statement as his. However, Loyd did not do so, but relied on his privilege to refuse to answer.") As described above, Mr. Rivera was unable to present the facts underlying his current claim at the time of his first trial. That his inability to do so was attributable to the State's failure to promptly disclosure exculpatory evidence within its possession - most notably, Serrano & Cordova recanted their prior sworn statements - should weigh in favor of allowing Mr. Rivera's claims to be consider Mr. Rivera's perjury claim.

## MIRANDA RIGHTS CLAIMS

16. In light of the persuasive interrogation techniques used by police - which at times are so coercive as to elicit confession from innocent people- it is curious that a majority of citizens who find themselves under suspicion waive their Miranda right to silence and an attorney. Mr. Rivera asks this Court to make clear that the treatment to which police deliberately subjected him will not be tolerated in an accusatorial system of justice rooted fairness. When police use regressive tactics reminiscent of a time when the "third-degree" was standard practice (see e.g., **Ashcraft v. Tennessee**, **322 US 143 [1944]**). From a practical and legal standpoint, "[c]onvictions which are involuntary, i.e., the product of

9

coercion, either physical or psychological, cannot stands" (**Rogers v. Richment, 365 US 534, 540**), that Miranda warnings may not adequately protect from police authority the people who may need it most, those falsely accused of crimes they did not commit.

17. In addition to establish the validity of a defendant's waiver of his or her Miranda rights, it is also the "People's burden to prove beyond a reasonable doubt that statements of a defendant they intend to rely upon at trial are voluntary." (**People v. Thomas, 22 N.Y.3d 629, 641**, see **People v. Guilford, 21 N.Y.3d 205, 208**. "[C]onvictions following the admission into evidence of confessions which are involuntary, i.e., the product of coercion, either physical or psychological, cannot stand", **Rogers, 365 US at 540**).

18. For all the foregoing, this Court should find that the state court decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court." In the landmark case of **Miranda v. Arizona, 384 US 436 (1966); See 28 USC §2254(d)(1)**.

### BRADY MATERIAL CLAIMS

19. Mr. Rivera maintained that he was wrongfully convicted and persistent in seeking out evidence of his innocence. Two distinct of Mr. Rivera's rights under the Due Process Clause of the Fourteenth Amendment; (1) Mr. Rivera's conviction was the product of perjured testimony, and (2) the State suppressed impeachment evidence, the disclosure of which was required under **Brady v. Maryland, 373 US 87 (1963); Giglio**

**v. United States, 405 US 150 (1972)**, and in soliciting false testimony, **Napue v. Illinois, 360 US 264, 269 (1959)**, and their progeny. Based on May 4th, 2009, the prosecutor informed the defense that petitioner's cousin Jahaira Serrano had recanted her pretrial sworn statement to the police that she had observed the bathroom brawl and that petitioner's brother had informed her after the brawl that petitioner had confessed to stabbing the victim. However, seeing that the evidence was not available to the defense during first trial, the defense was denied the right to a fair trial. See **Blackston v. Rapelje, 769 F.3d 411, 427-28 (6th Cir. 2014)** ("Perhaps the post telling remark by the state judge at the second trial was his decision to reject that the recantation were "credible". However, the question of witness credibility is the most fundamental issues that a jury resolves. It is quintessential material for the jury and, plainly, not within the province of the judge").

20. With respect to Ms. Serrano's Brady/Giglio claim, in **Ortega v. Duncan, 333 F.3d 102 (2nd Cir. 2003)**, holding that due process violated when gave false testimony and when it can be demonstrated that without such testimony jury probably would not have found defendant guilty. In **Mendez v. Artuz, 303 F.3d 411, 413 (2d Cir. 2002)**, holding that, "[W]e agree with the District Court that in the context of the entire record presented here, "[a]dvancing the idea that someone else wanted to kill Johnny Rodriguez for an entirely different motive than the one attributed to petitioner Hilden Mendez (also known as Tony Mendez) as advanced by the prosecution at trial would have

11

given Mendez the opportunity to established reasonable doubt in the jury's mind as to who shot Johnny Rodriguez" **Id. at *13**. The rationale of these cases seems to have been that convictions must not be obtained through prosecutorial misconduct, which violates civilized notions of fairness and thereby taints the entire criminal process. Lawless law enforcement should not be tolerated.

21. Respondent does not suggest that Mr. Rivera caused Ms. Serrano to recant her pretrial sworn statement or to make themselves unavailable for second trial. Therefore, any "wrongdoing" by the witness is insufficient to nullify Mr. Rivera's right to confront; See **Alvarez, 763 F.3d 223, at *9** (holding that the relative weakness of the case against Alvarez, would no have been taken by the jury as "reflect[ing] a serious lack of thoroughness is the police investigation"). Petitioner contends that, based on the foregoing, the judgment here was procured by duress, misrepresentation and fraud by members of the Kings County District Attorney in the prosecution of this indictment in question. Moreover, it is the prerogative of the petitioner and his counsel - and not that of the prosecution - to exercise judgment in determining whether the petitioner should make use of it. The Second Circuit has addressed the timeliness question generally have reversed convictions where information was not disclosed at a time when it could be used effectively at trial proceeding **Lewis v. Connecticut Com'r of Correction, 786 F.3d at 190-191** (discussing timeliness issue and aff'd based on delayed

12

disclosure); **Leka v. Portuondo, 257 F.3d 89, 99 (2d Cir. 2001)**.

22. The powerful impeachment character of that evidence, together with the centrality of Cordova's testimony to the State's case, demonstrate that undisclosed information was "material" to the conviction for purpose of due process analysis. See, **United States v. Spinelli, 551 F.3d 159, 165 (2d Cir. 2008)** ("The materiality of undisclosed information which could have served to impeach a government witness is affected by the importance of the witness's testimony, as well as the importance of the disclosed information to the impeachment of the witness"). Mr. Rivera submits that he has made a prima facie showing of a constitutional violation sufficient to merit consideration by this Court.

23. Mr. Rivera respectfully requests that the Court grant authorization under **28 USC §2254[a]**, because the decision of the state court "was contrary to, or involved an unreasonable application of, clearly established federal law, as determined by the Supreme Court," the writ of habeas corpus should be granted in all respects.

## ACTUAL INNOCENT CLAIM

24. Contrary to the respondent's argument, a petitioner need not offer new evidence in order to invoke that he is actually innocent and it is not a ground for habeas corpus. After all, the presumption of innocence is nothing more than the presumption of human error in the administration of justice.

25. In any event, Mr. Rivera's present claims satisfy the

13

requirements of **28 USC §2254(a)** because the evidence on which they are based, after his first trial, the defense counsel interviewing Ms. Serrano asked the investigator to locate Serrano's boyfriend Rudy Cordova. Prior to second trial, Cordova reported to the police, and gave a sworn statement to a prosecutor, that he had observed the bar room brawl, that he had not seen a knife in petitioner's hands, and that defendant's brother later informed him that defendant stabbed the victim according to defense counsel the investigator located Cordova, who told the investigator that the police had pressured him to say falsely that defendant's brother had implicated defendant in the stabbing (See Respondent pg. 4, ¶14-15).

26. While we are aware that guilt or innocence is ordinarily a question for the jury to decide, this is one of these rare cases where deference to the jury's verdict is unwarranted because there is a real risk that an innocent man has been convicted, that a miscarriage of justice has occurred. Under the controlling interpretation of the illustrated by **Friedman v. Rehal**, **618 F.3d 142 (2d Cir. 2010)**. In Friedman abuse case, new science revealed that "aggressive investigatory techniques" could result in "false reports", **Id. at 160**. And based on a finding of "new and material evidence," there was a "reasonable likelihood" of actual innocence. Therefore, the Second Circuit fashioned a new discovery order, "reinvestigation," separate and apart and as a predicate for an actual innocence claim in state court, **Id. at 159-60**. The

14

Second Circuit, sitting as a court of equity, reached out for a remedy beyond the strictures of law. Furthermore, it underscored the ethical and moral imperative incumbent on the state to re-investigate, **Id. at 159,** and it also admonished appellate courts not to sit as "silent accomplices" when the record raised serious doubt of guilty. **Id. at 161.**

27. Here, the difference between the recantation and the impeachment at the first trial was one of a kind, and that the state court was objectively unreasonable in concluding otherwise. First, the recantation were not cumulatively impeaching, no other evidence gave the jury any specific reason to believe that the witnesses were lying on the stand during the first trial testimony. Defense counsel asserted that, if he had learned prior to the conclusion of the trial abut the police's purported pressure on Serrano and Cordova, then he would have called them as witness to testify about the purported police pressure, (See Respondent pg. 5, ¶16). That information would have added a great deal of substance and credibility to the defense's first-trial impeachment, and it was unreasonable to dismiss it as being merely cumulative.

28. Mr. Rivera's second trial, he took the stand and testified that he did not have a knife on the night of the homicide, that he did not stab the victim, and that his confession was coerced by the detectives who allegedly threatened him that, if he did not confess to the stabbing, then defendant's brother would be charged for the homicide (Respondent pg. 3, ¶10). There was no physical evidence linking

15

Mr. Rivera with the murder, no DNA, and, in such a situation, additional impeachment tending to tip the credibility balance cannot be brushed aside as cumulative, **See Id**. The witnesses' credibility - particularly Mr. Cordova's - was critical to the case at bar. At the second trial, the prosecution mentioned Cordova then times in opening arguments that Cordova's story was entirely consistent the whole time, all the way up to the testimony you heard from a prior hearing. It would have been impossible for the prosecution to have characterized Cordova's reliability in this manner.

29. A defendant who is convicted through the use of perjured testimony suffers a violation of his due process rights in a case where the fact give rise to "the firm belief that but for the perjured testimony, the defendant would most likely not have been convicted" **Sanders v. Sullivan, 863 F.2d 218, 226 (2d Cir. 1988)**. Where this materiality standard is met, a due process violation will be found even the government did not knowingly make use of perjured testimony, because a failure to cure a conviction based on false testimony "exhibits sufficient state action to constitute a due process violation" **Id. at 224**.

30  Under the above circumstances, it is submitted that the Court should conduct an evidentiary hearing in the case at bar, see **Lopez v. Miller, 906 F.Supp.2d 42, 58 (E.D.N.Y. 2012)**, in which provide that "[i]f the petition is not dismissed," the District Judge must review the record "to determined whether an evidentiary hearing is warranted."

16

## CONCLUSION

For the foregoing reasons, the writ of habeas corpus should be granted in all respects, and the petition should not be dismissed without an evidentiary hearing, pursuant to **Rule 8(c) Rules Governing 28 USC §2254** cases.

Dated: September __8__, 2015
       Stormville, New York

                              Respectfully submitted,

                              *Enrique Rivera*
                              Enrique Rivera 09-A-3190
                              Green Haven Corr. Fac.
                              P. O. Box 4000
                              Stormville, NY 12582

TO:    Clerk of the Court
        United States District Court
        Eastern District of New York

        Hon. Kenneth P. Thompson, Esq.
        Kings County District Attorney
        Renaissance Plaza
        350 Jay Street
        Brooklyn, NY 11201