RECEIVED

MAR 05 2018

PRO SE OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------X
ENRIQUE RIVERA,

                        Petitioner,                      **REPLY**

        -Against-                          15-CV-2657 (WFK)

THOMAS GRIFFIN

                        Respondent.
------------------------------------------------------X

      I, ENRIQUE RIVERA declare under the penalties of perjury, pursuant to 28

U.S.C. §1746, that the contents of this declaration in support of my Pro Se, application,

are true, accurate, and correct, and affirm the same.

### PRELIMINARY STATEMENT

      1. Petitioner respectfully submits that this Honorable Court is fully familiar with

the facts and circumstances of the instant case and in the interest of judicial efficiency, a

comprehensive statement of the facts will not be included herein. Rather, petitioner will

reference the prior matter filed in this action and the statement of facts and findings set

forth in the Declaration in Support of Respondent's Supplemental Affirmation in

Response to Order to Show Cause.

      2. Respondent answered by Supplemental Affirmation in Response to Order to

Show Cause to motion to amend, pursuant to 28 U.S.C. §2254(a), adding a memorandum

of law, dated January 5, 2018, which was received by Petitioner via legal mail. There are

several assertions made by ADA Solomon Neubort, which are inconsistent with

AEDPA's and state procedures curbing access to the courts in order to proscribed abuse

of the writ, and/or otherwise untrue or misleading, which are inconsistent with **Brady**

1

claim were fully exhausted on post-conviction motion.

     3. In the habeas context, the doctrine of procedural default "is prudential rather than jurisdictional," accord **Spence v. Superintendent, Great Meadow Corr. Facility**, 219 F.3d 162, 170 (2d Cir. 200), and that "procedural default is normally a 'defense' that the state is 'obligation to raise' and preserve' if it is not 'lose the right to assert that defense thereafter.' **Cotto**, 331 F.3d at 238 n. 9 (quoting **Trest v. Cain**, 522 U.S. 87, 89 (1997). Therefore, in **Cotto**, the Second Circut "assume[d] without deciding that the state bears the burden of proving the adequacy of the state procedural rule. (Id.). Yet, under then- ex- District Attorney Charles Hynes, the **Brady** rule was considered nothing more than a suggestion, with prosecutors routinely holding back exculpatory evidence to win their cases. [**See**: **Exhibit A**].

     3. Contrary to the Respondent allegation, it is a matter of simple logic. How can pro se petitioners possibly "make a record" regarding something he does not even know existed? In addition, how can petitioner "prove a negative", i.e., that the respondent's did not follow the procedure mandated by **Brady v. Maryland**, 373 U.S. 83 (1963) other than by pointing to the record's "silence." The Court extended this duty to disclose information to impeachment evidence in **Giglio v. United States**, 450 U.S. 150 (1972). Unfortunately, the Kings County District Attorney's Office frequently violated the directives of **Brady** and **Giglio**, as set forth in **Leka v. Portuondo**, 257 F.3d 89 (2d Cir. 2001), and when they do, their misconduct is often not discovered until well into state post conviction review. Cf. **Fuentes v. Griffin**, 829 F.3d 233, 245 (2d Cir. 2016).

     4. The Kings County District Attorney Office, which routinely violated petitioner's due process rights under **Brady/Giglio** which state that statutes of limitation often prevent

2

petitioner from raising substantive federal violations for **Brady** and **Giglio** claims that are not

discovered within a prescribed time period. For example, in **Leka v. Portuondo**, this Court

explained:

> The limited Brady material disclosed to [the defendant] could
> have led to specific exculpatory information only if the
> defense undertook further investigation. When such a
> disclosure is first made on the eve of trial, or when trial is
> under way, the opportunity to use it may be impaired. The
> defense may be unable to divert resources from other
> initiatives and obligation that are may seem more pressing. In
> addition, the defense may be unable to assimilate the
> information into its case. See **United States v. Cobb**, 271
> F.S. 159, 163 (S.D.N.Y. 1967) (Mansfield, J.)("There may be
> instances where inculpatory evidence for the first time during
> trial would be too late tenable the defendant to use it
> effectively in his own defense, particularly if it were to open
> the door to witnesses or documents requiring time to be
> marshal and presented.").

(**Id**. at 101).

5. Assuming, however, that suppressed evidence does not surface until after a

conviction, how should appellate courts evaluate the fairness of the resulting conviction. In

**Brady v. Maryland**, 373 U.S. 83 (1963) had determined some 55 years prior, when Justice

Douglas said,

> "Suppression by prosecution of evidence favorable to an
> accused upon request violates due process where evidence
> is material either to guilt or to punishment, irrespective of
> good faith or bad faith of prosecution" (**Id**. at 87). Both
> exculpatory and impeachment evidence are deemed
> "favorable to the defense under **Brady**.

6. It would be inimical to American Jurisprudence should we forget what Justice

Douglas said and instead, rewrite and/or disregard a longstanding rule to cover the court's

mistake. This court should not only follow, but also enforce the **Brady** rule. This has

**always** been the Rule of Law, and they have chosen to conveniently ignore it, especially

when it hurts the prosecution. When the balance of law is equal, whether right or wrong, it should be followed to the letter, for **that** is what the law is and should always be -- equal, fair and blind.

7. Even when there were no claims to innocence or legal error, in the spirit of **Brady**, clearly isolates the constitutional issue with which it deals as definitive statement in **Brady/Giglio**, should be controlling: "[A] new trial is required if 'the false testimony could ... in any reasonable likelihood have affected the judgment of the jury." As definitively stated in **Weary v. Cain**, 136 S.Ct. 1002 (2016), this decision is also important because it revealed another serious fault in the **Brady** doctrine: The Court made clear that the test on post-conviction investigation by a pro se defendant[s] is nearly impossible for the defendant to conduct his own investigation to substantiate his allegations.

## CONCLUSION

Based on the foregoing arguments and authorities, this Honorable Court is respectfully urged to grant the Petitioner at the very least, an evidentiary hearing.

Dated: February 25, 2018

Respectfully submitted,

*Enrique Rivera*

Enriquez Rivera

4

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------X
ENRIQUE RIVERA,

                      Petitioner,          **CERTIFICATE OF SERVICE**

      -Against-                   15-CV-2657 (WFK)

THOMAS GRIFFIN

                    Respondent.
----------------------------------------------------X

      I, ENRIQUE RIVERA, hereby certify under the penalty of perjury, pursuant to 28 U.S.C. §1746, that on the 25th day of February 2018, I served by United States Mail the Petitioner's Reply to an Memorandum of Law in Response to the District Attorney's Supplemental Affirmation in Response to Order to Show Cause.

To the Following:

Clerk of the Court
U.S. District Court
Eastern District of New York
\225 Cadman Plaza
Brooklyn, NY 1201

Erci Gonzalez
Kings County District Attorney
350 Jay Street
Brooklyn, NY 11201

                           Respectfully submitted,

                           Enriquez Rivera