# EXHIBIT A

# Conviction was 'race & politics'
# 'GRID SLAY' MA BLASTS EX-DA



New York Post, Friday, February 9, 2018 nypost.com

Stephen Yang

**SLAM:** Doreen Giuliano says son John Giuca (left inset) was railroaded by then-DA Charles Hynes (right inset) because of re-election concerns.

By GABRIELLE FONROUGE

Former Brooklyn DA Charles Hynes needed a white trophy — he framed John Giuca, the angry mother of the "Grid Kid" murder convict said a day after Giuca's conviction was tossed on appeal.

Hynes was running in a close primary race against John Sampson, an African-American state senator, back in 2005 when Giuca was put on trial on the slimmest of evidence, his mom, Doreen Giuliano, told The Post in an emotional interview on Thursday.

Just weeks after Giuca and co-defendant Tony Russo were convicted for the shooting death of New Jersey college-football star Mark Fisher, Hynes bested Sampson by just 4 percentage points, and went on to win a fifth term as DA.

"It wasn't about Charles Hynes doing the right thing," Giuliano said from the doorstep of her Prospect Park South home.

"It was about black and white," she claimed.

"It was an election year, and we are predominantly a black [borough], Brooklyn. Just put away the black kids? You're not getting the black vote," she claimed.

"Charles Hynes took my son for the election of 2005."

On Wednesday, 10 years into Giuca's 25-to-life murder sentence, a panel of appellate judges unanimously ruled that prosecutors failed to tell jurors that a jailhouse snitch named John Avitto received special DA treatment for his testimony.

Fisher, 19, was last seen partying at Giuca's house before his body was recovered nearby, wrapped in a blanket from Giuca's house.

Still, with no murder weapon and no forensics linking Giuca to the crime, the prosecution's case rested heavily on testimony by Avitto and the other witnesses — who left jurors so convinced that they convicted him after just two hours of deliberations.

But Avitto would later recant his story, as did two of the other three key witnesses who helped

## Retrial decision looms

The convicted "Grid Kid' slayer could learn as early as this month whether he'll be exonerated or face retrial.

John Giuca, who's spent the last 10 years imprisoned for the murder of college-football star Mark Fisher, will return to court Feb. 20, his defense attorney Mark Bederow said. Prosecutors will likely announce then whether they intend to retry Giuca, who's currently serving up to life for the 2003 murder.

If the Brooklyn DA's Office opts to reprosecute, Bederow told The Post, he'll petition to have his client released on bail pending retrial.

An appeals court unanimously overturned the 34-year-old's 2009 conviction Wednesday, saying jurors should have been made aware that key prosecution witness and jailhouse snitch John Avitto expected special treatment in exchange for his testimony against Giuca.

*Emily Saul*

2014 court documents.

Giuliano also had some choice words Thursday for her son's lead trial prosecutor, Anna-Sigga Nicolazzi, who now is starring in her own true crime show.

On "True Conviction," which premiered last month on the Investigation Discovery channel, Nicolazzi boasts that as a prosecutor, she won guilty verdicts in each of her 35 trials.

"The best years of John's life, all his 20s, they took it so Anna-Sigga Nicolazzi can have 35 straight wins and look all pretty and cute for the public," the mom railed Thursday.

"Anna-Sigga Nicolazzi did this and Charles Hynes, and it was all because of the election."

Hynes, responding to the allegations, said, "This is a baseless claim supported by no facts whatsoever." Nicolazzi declined to comment.

Giuca, now 34, has maintained his innocence and remains in jail pending a decision on whether current DA Eric Gonzalez will mount a retrial.

That decision is expected as early as Feb. 20, said Giuca's lawyer, Mark Bederow.

*Additional reporting by Emily*

2018 WL 736032
Supreme Court,
Appellate Division, Second Department, New York.

The PEOPLE, etc., respondent,
v.
John GIUCA, appellant.

2016–06775
|
(Ind. No. 8166/04)
|
Argued—September 25, 2017
|
February 7, 2018

**Attorneys and Law Firms**

Law Office of Mark A. Bederow, P.C., New York, N.Y. (Andrew M. Stengel of counsel), for appellant.

Eric Gonzalez, District Attorney, Brooklyn, N.Y. (Leonard Joblove and Diane R. Eisner of counsel), for respondent.

MARK C. DILLON, J.P., RUTH C. BALKIN, L. PRISCILLA HALL, HECTOR D. LASALLE, JJ.

Opinion

## DECISION & ORDER

*1 Appeal by the defendant, by permission, from an order of the Supreme Court, Kings County (Danny K. Chun, J.), entered June 13, 2016, which, after a hearing, denied his motion pursuant to CPL 440.10 to vacate a judgment of the same court (Alan D. Marrus, J.) rendered October 19, 2005, convicting him of murder in the second degree, robbery in the first degree, and criminal possession of a weapon in the second degree, upon a jury verdict, and imposing sentence.

ORDERED that the order is reversed, on the law and the facts, the defendant's motion to vacate the judgment is granted, the judgment is vacated, and the matter is remitted to the Supreme Court, Kings County, for a new trial.

On October 12, 2003, at approximately 6:40 a.m., Mark Fisher was murdered a few blocks from the defendant's home. Fisher, along with several other individuals, including the defendant and the codefendant, Antonio Russo, had been at the defendant's home prior to the murder. The primary evidence against the defendant at trial came from three witnesses who testified regarding conflicting inculpatory statements made to them by the defendant.

One of those witnesses, John Avitto, who had a lengthy criminal history and been incarcerated with the defendant on Rikers Island, testified regarding inculpatory statements made to him by the defendant while they were incarcerated together. At the time of his trial testimony, Avitto had pleaded guilty to a felony burglary charge. Under the terms of his plea agreement, Avitto was to successfully complete a drug treatment program. If Avitto failed to successfully complete the program, he faced an alternate sentence of 3½ to 7 years incarceration.

During direct examination by the prosecutor at the defendant's trial, Avitto testified, as relevant to this appeal, that he had been doing well in the drug program, and that he had one relapse after which he called his caseworker and asked for further help. He further testified that he first contacted the police with respect to the defendant's case sometime in June of 2005, and that he met with either the prosecutor or detectives four times prior to testifying. He also testified that he was not promised or given anything, nor did he ask for anything, in exchange for his testimony.

On cross-examination, Avitto testified that he left the drug program without permission on June 9, 2005, and appeared in court for his criminal case on June 13, 2005. He also testified that police officers associated with the defendant's case assisted him in getting to court on that day. He admitted to relapsing upon leaving the program on June 9, 2005, and then again on August 24, 2005. He denied contacting the police or the prosecution to receive assistance with his own case, and denied contacting the police immediately after leaving the drug program.

During redirect examination by the prosecutor, Avitto reiterated that after he left the drug program, he voluntarily contacted his caseworker and appeared with him in court on June 13, 2005, and that the court released him and gave him another opportunity to complete the program. Avitto testified similarly with respect to his second relapse. Avitto also testified that he had pleaded

guilty in the burglary case months before he spoke to the police about the defendant's case, and he reiterated that he did not contact the police about the defendant's case because he had left the drug program.

*2 After Avitto's testimony, the defendant's attorney made a request for any *Rosario* material (*see People v. Rosario*, 9 N.Y.2d 286, 213 N.Y.S.2d 448, 173 N.E.2d 881) regarding Avitto, and specifically any information regarding his contact with the police. The prosecutor stated that she was present for all interviews with Avitto, and that there were no notes taken and no documents generated.

During summation, the prosecutor repeated and emphasized Avitto's testimony. Furthermore, the prosecutor asserted that there was no evidence that Avitto received any benefit or consideration for his testimony, that when Avitto left the drug program he contacted his caseworker right away, that it was not surprising that a judge would give Avitto multiple chances when he was showing himself to be acting responsibly, and that Avitto contacted the police with information regarding the defendant's case because "for once he tried to do something right."

The defendant was convicted of murder in the second degree, robbery in the first degree, and criminal possession of a weapon in the second degree. He was sentenced to a prison term of 25 years to life on the murder conviction, to run concurrently with the lesser sentences imposed on the other convictions. The judgment was affirmed on direct appeal (*see People v. Giuca*, 58 A.D.3d 750, 871 N.Y.S.2d 709).

Thereafter, the defendant moved pursuant to CPL 440.10 to vacate the judgment, contending, inter alia, that the People violated *Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 and knowingly used false and misleading testimony.

At a hearing on the motion, the evidence demonstrated that after Avitto left the drug program on June 9, 2005, he contacted police that same day regarding providing information on the defendant's case, and that a warrant was issued for Avitto's arrest on June 10, 2005. The evidence further demonstrated that Avitto met with detectives and the prosecutor on June 13, 2005. During that meeting, Avitto informed the detectives and the prosecutor that he had left the drug program, and that a warrant had been issued for his arrest. Furthermore, the detectives and the prosecutor, in addition to his caseworker, accompanied Avitto when he returned to court on June 13, 2005. The prosecutor appeared on behalf of the District Attorney's office and informed the court that Avitto was cooperating in a murder investigation. Moreover, there was evidence which demonstrated that the prosecutor discussed with Avitto's caseworker and the court the possibility of Avitto entering another drug program, and having him reside with his mother. The defendant demonstrated that the District Attorney's office did not provide such information to the defense prior to trial.

Additional evidence demonstrated: that Avitto had not done well while in the drug program; that he had violated the conditions of his plea agreement on numerous occasions; that he was discharged from one drug program for bringing cigarettes into the program and distributing them to other patients; and that during at least one of several court appearances related to violations which occurred subsequent to June 9, 2005, the issue of Avitto's cooperation and upcoming testimony was mentioned. Moreover, the District Attorney's office had sent an email communication to the agency overseeing Avitto's drug treatment, requesting that his case be marked "for special attention," and that the District Attorney's office be kept posted as to his progress. The defendant demonstrated that none of this additional information was provided to the defense prior to trial.

*3 Following the hearing, the Supreme Court denied the defendant's motion to vacate the judgment. We reverse.

The People have a duty to disclose to the defense evidence in its possession that is favorable to the accused (*see Brady v. Maryland*, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215; *People v. Steadman*, 82 N.Y.2d 1, 7, 603 N.Y.S.2d 382, 623 N.E.2d 509). The disclosure of evidence affecting credibility falls within this general rule (*see Giglio v. United States*, 405 U.S. 150, 154, 92 S.Ct. 763, 31 L.Ed.2d 104; *People v. Steadman*, 82 N.Y.2d at 7, 603 N.Y.S.2d 382, 623 N.E.2d 509; *People v. Novoa*, 70 N.Y.2d 490, 496, 522 N.Y.S.2d 504, 517 N.E.2d 219). Thus, the "existence of an agreement between the prosecution and a witness, made to induce the testimony of the witness, is evidence which must be disclosed under *Brady* principles" (*People v. Cwikla*, 46 N.Y.2d 434, 441, 414 N.Y.S.2d 102, 386 N.E.2d 1070; *see Giglio v. United States*, 405 U.S. at 153–154, 92 S.Ct. 763; *People v. Steadman*, 82 N.Y.2d at 7, 603 N.Y.S.2d 382, 623 N.E.2d 509; *People v. Novoa*, 70 N.Y.2d at 496,

522 N.Y.S.2d 504, 517 N.E.2d 219). "It is not the form of a promise, or any label the parties may affix to it, that triggers the prosecutor's duty of disclosure" (*People v. Novoa*, 70 N.Y.2d at 497, 522 N.Y.S.2d 504, 517 N.E.2d 219). "Rather, the obligation arises from the fact that the prosecutor and the witness have reached an understanding in which the witness's cooperation has been exchanged for some *quid pro quo* on the part of the prosecutor. Once such an understanding has been reached, it is for the jury to determine how much value to assign it in terms of assessing the witness's credibility" (*id.*).

Prosecutors must not only disclose exculpatory or impeaching evidence but must also correct the knowingly false or mistaken material testimony of a prosecution witness (*see People v. Colon*, 13 N.Y.3d 343, 349, 890 N.Y.S.2d 424, 918 N.E.2d 936; *see also People v. Steadman*, 82 N.Y.2d at 7, 603 N.Y.S.2d 382, 623 N.E.2d 509; *People v. Novoa*, 70 N.Y.2d at 496, 522 N.Y.S.2d 504, 517 N.E.2d 219). "Where a prosecutor elicits or fails to correct such inaccurate testimony, reversal and a new trial are necessary unless there is no reasonable possibility that the error contributed to the conviction" (*People v. Colon*, 13 N.Y.3d at 349, 890 N.Y.S.2d 424, 918 N.E.2d 936 [internal quotation marks omitted] ). "By their very nature, benefits conferred on a witness by a prosecutor provide a basis for the jury to question the veracity of a witness on the theory that the witness may be biased in favor of the People. For this reason, it is important that witnesses provide truthful testimony when questioned about the receipt of such benefits, and the People must be vigilant to avoid misleading the court or jury" (*id.* at 350, 890 N.Y.S.2d 424, 918 N.E.2d 936).

To establish a *Brady* violation, a defendant must show that the evidence is favorable to the defendant because it is either exculpatory or impeaching in nature, the evidence was suppressed by the prosecution, and prejudice arose because the suppressed evidence was material (*see People v. Fuentes*, 12 N.Y.3d 259, 263, 879 N.Y.S.2d 373, 907 N.E.2d 286; *see also People v. Garrett*, 23 N.Y.3d 878, 885, 994 N.Y.S.2d 22, 18 N.E.3d 722). In New York, where, as here, a defendant makes a specific request for undisclosed evidence, materiality is established if there exists a reasonable possibility that it would have changed the result of the proceedings (*see People v. Fuentes*, 12 N.Y.3d at 263, 879 N.Y.S.2d 373, 907 N.E.2d 286).

Based on the evidence presented at the defendant's trial and at the hearing, we find that the prosecutor had a duty to disclose the circumstances surrounding Avitto's initial contact with the police regarding the defendant's case, the circumstances surrounding the prosecutor's appearance in court with Avitto on June 13, 2005, and the information that the prosecutor provided to the court at that appearance (*see People v. Steadman*, 82 N.Y.2d 1, 603 N.Y.S.2d 382, 623 N.E.2d 509; *People v. Novoa*, 70 N.Y.2d 490, 522 N.Y.S.2d 504, 517 N.E.2d 219). The prosecutor further had a duty to correct Avitto's testimony regarding his contact with her and with detectives, the circumstances surrounding that contact, and his progression in drug treatment (*see People v. Colon*, 13 N.Y.3d 343, 890 N.Y.S.2d 424, 918 N.E.2d 936; *People v. Steadman*, 82 N.Y.2d 1, 603 N.Y.S.2d 382, 623 N.E.2d 509; *People v. Novoa*, 70 N.Y.2d 490, 522 N.Y.S.2d 504, 517 N.E.2d 219).

\*4 While the evidence presented at the hearing did not demonstrate "the existence of an express promise" between Avitto and the District Attorney's office, there was "nonetheless a strong inference" of an expectation of a benefit "which should have been presented to the jury for its consideration" (*People v. Cwikla*, 46 N.Y.2d at 442, 414 N.Y.S.2d 102, 386 N.E.2d 1070). Avitto's credibility was "an important issue in the case" (*Giglio v. United States*, 405 U.S. at 155, 92 S.Ct. 763) and a "pivotal consideration" for the jury (*People v. Steadman*, 82 N.Y.2d at 8, 603 N.Y.S.2d 382, 623 N.E.2d 509), and the nondisclosed evidence was certainly impeaching in nature.

The evidence at issue here—Avitto's immediate contact with the police on June 9, 2005, after leaving the drug program, his subsequent court appearance with detectives and the prosecutor on June 13, 2005, when he was released on his own recognizance, as well as his ability to remain out of custody despite poor progress in his drug treatment and numerous violations—was of such a nature that the jury could have found that, despite Avitto's protestations to the contrary, "there was indeed a tacit understanding" between Avitto and the prosecution that he would receive or hoped to receive a benefit for his testimony (*People v. Cwikla*, 46 N.Y.2d at 441, 414 N.Y.S.2d 102, 386 N.E.2d 1070). This evidence was material in nature, and its nondisclosure prejudiced the defendant, as it constituted impeachment material and tended to show a motivation for Avitto to lie (*see id.* at 442, 414 N.Y.S.2d 102, 386 N.E.2d 1070).

Accordingly, the prosecutor was not only required to disclose this evidence to the defendant, but was further required to clarify "the record by disclosing all the details of what had actually transpired" between the District Attorney's office and Avitto (*People v. Steadman*, 82 N.Y.2d at 8, 603 N.Y.S.2d 382, 623 N.E.2d 509). The prosecutor further had the obligation to correct any misleading or false testimony given by Avitto at trial regarding his contact with detectives and the prosecutor, and his progression in drug treatment (*see People v. Colon*, 13 N.Y.3d 343, 890 N.Y.S.2d 424, 918 N.E.2d 936; *People v. Novoa*, 70 N.Y.2d 490, 522 N.Y.S.2d 504, 517 N.E.2d 219). These errors were further compounded when the prosecutor reiterated and emphasized Avitto's misleading testimony during summation (*see People v. Colon*, 13 N.Y.3d 343, 890 N.Y.S.2d 424, 918 N.E.2d 936; *People v. Novoa*, 70 N.Y.2d 490, 522 N.Y.S.2d 504, 517 N.E.2d 219; *People v. Cwikla*, 46 N.Y.2d 434, 414 N.Y.S.2d 102, 386 N.E.2d 1070; *see also People v. Taylor*, 26 N.Y.3d 217, 22 N.Y.S.3d 140, 43 N.E.3d 350).

Giving proper deference to the credibility findings of the hearing court, we nevertheless find that the nondisclosure of this evidence by the prosecution, even if it was as a result of negligence and not by design, created a reasonable possibility that the prosecution's errors affected the jury's verdict. Accordingly, reversal and a new trial are necessary (*see Giglio v. United States*, 405 U.S. at 154–155, 92 S.Ct. 763; *People v. Colon*, 13 N.Y.3d at 349, 890 N.Y.S.2d 424, 918 N.E.2d 936; *see also People v. Cwikla*, 46 N.Y.2d at 442, 414 N.Y.S.2d 102, 386 N.E.2d 1070).

In light of our determination, we need not reach the defendant's remaining contentions.

DILLON, J.P., BALKIN, HALL and LASALLE, JJ., concur.

**All Citations**

--- N.Y.S.3d ----, 2018 WL 736032, 2018 N.Y. Slip Op. 00846

End of Document

© 2018 Thomson Reuters. No claim to original U.S. Government Works.

FILED CLERK 2018 MAR -5 PM 4:38 U.S. DISTRICT COURT EASTERN DISTRICT OF NEW YORK