*To be argued by*
WARREN S. LANDAU
*(15 Minutes)*

# New York Supreme Court

**RECEIVED**
**COUNTY (LAW)**
**APPEALS BUREAU**

12  JUN 18  P12 :24

## APPELLATE DIVISION -- SECOND DEPARTMENT

PEOPLE OF THE STATE OF NEW YORK,

*Respondent,*

*- against -*

ENRIQUE RIVERA,

*Defendant-Appellant.*

**TO BE HEARD ON**
**THE ORIGINAL**
**RECORD**

Kings County
Ind. No. 1453/05

**A.D. No. 09-05779**

# REPLY BRIEF FOR DEFENDANT-APPELLANT

LYNN W. L. FAHEY
Attorney for Defendant-
Appellant
2 Rector Street, 10th Floor
New York, N.Y. 10006
(212) 693-0085

WARREN S. LANDAU
*Of Counsel*
June 2012

## TABLE OF CONTENTS

PRELIMINARY STATEMENT . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

**ARGUMENT**

    THE PEOPLE'S CLAIMS THAT APPELLANT DID NOT
ADOPT THE EVIDENCE ON WHICH HE BASES HIS
LESSER INCLUDED OFFENSE ARGUMENTS, THE
EVIDENCE SHOWED A MANIFEST INTENT TO CAUSE
SERIOUS PHYSICAL INJURY, AND THERE IS NO
RATIONAL VIEW THAT APPELLANT WAS INTOXICATED
ARE MERITLESS, IMMATERIAL, OR UNPRESERVED, AND
THE PEOPLE'S HARMLESS ERROR ANALYSIS IS
INAPPLICABLE (Replying to Respondent's Point I) . . . . . . . . . . . . 2

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

CERTIFICATION PURSUANT TO 22 N.Y.C.R.R. §670.10.3(f) . . . . . . . . 15

## PRELIMINARY STATEMENT

In his main brief, appellant argued, <u>inter alia</u>, that, because the evidence did not evince a manifest intent to cause death or serious physical injury, and given the evidence of appellant's intoxication and its issuance of an intoxication charge, the court erred in refusing to submit second-degree manslaughter as a lesser included offense of second-degree murder.  Appellant now replies to respondent's brief, which argues that appellant disavowed part of the evidence on which his appellate argument is premised, the evidence that appellant committed first-degree manslaughter was "incontrovertibl[e]," and any error in refusing to submit second-degree manslaughter was harmless.[1]

---

[1]     On June 13, 2012, the Clerk of the Court enlarged appellant's time to file his reply brief to June 18, 2012.  Appellant's main brief adequately addresses the People's remaining arguments.

1

<u>ARGUMENT</u>

THE PEOPLE'S CLAIMS THAT APPELLANT DID NOT ADOPT THE EVIDENCE ON WHICH HE BASES HIS LESSER INCLUDED OFFENSE ARGUMENTS, THE EVIDENCE SHOWED A MANIFEST INTENT TO CAUSE SERIOUS PHYSICAL INJURY, AND THERE IS NO RATIONAL VIEW THAT APPELLANT WAS INTOXICATED ARE MERITLESS, IMMATERIAL, OR UNPRESERVED, AND THE PEOPLE'S HARMLESS ERROR ANALYSIS IS INAPPLICABLE (Replying to Respondent's Point I).

The People maintain that appellant failed to adopt, and actually disavowed part of the evidence on which he bases his lesser included offense argument (Respondent's Brief at 12, 14, 16). They also argue that the proof is consistent only with guilt of first-degree manslaughter (Respondent's Brief at 13-16, 18); appellant's argument is partially unpreserved (Respondent's Brief at 23-24), and, in any event, the evidence did not support a view that intoxication negated an intent to cause serious physical injury (Respondent's Brief at 24-28); and any error in failing to charge second-degree manslaughter as a lesser included offense was harmless (Respondent's Brief at 19-23). The People's arguments, however, are lacking in merit or otherwise insufficient to bar reversal of appellant's conviction.

The People argue that the court properly refused to submit second-degree manslaughter because "neither party was advancing at trial a version of events" compatible with the evidence on which appellant relies in making his appellate

2

argument and "both the People and [appellant] were affirmatively disavowing" that evidence (the pretrial statements) (Respondent's Brief at 12, 14, 16, 19). But in deciding whether to submit a lesser-included offense, a court must "view the evidence in the light most favorable to the defendant," People v. Devonish, 6 N.Y.3d 727, 728 (2005) (emphasis added). And a lesser included offense must be submitted if there is a rational view of the evidence that the defendant is guilty of the lesser offense but not of the greater one. E.g., People v. Randolph, 81 N.Y.2d 868, 869 (1993); People v. Morel, 213 A.D.2d 497, 498 (2d Dept. 1995). As demonstrated in appellant's initial brief, at 28-30, because a jury may believe portions of both the prosecution or defense evidence or disbelieve the whole of either side's evidence, neither the prosecutor's elicitation of evidence that was inconsistent with portions of appellant's statements, appellant's testimonial disavowal of the version of events contained in his pretrial statements, nor any defense argument inconsistent with the disavowed evidence justified the refusal to submit second-degree manslaughter as a lesser included offense. People v. Carlos C., 58 A.D.2d 655, 655 (2d Dept. 1977) (defendant's denial that he engaged in any sexual activity did not justify court's refusal to submit lesser included offenses of first-degree rape). See also People v. Roche, 98 N.Y.2d 70, 78 (2002) ("statements in a summation are not evidence"); People v. Brown, 82 N.Y.2d 869 (1993) (a defendant's outright denial that he committed the charged conduct "does not alone support or defeat" a charge

3

on a defense); <u>Wartels</u> v. <u>County Asphalt, Inc.</u>, 29 N.Y.2d 372, 378 (1972) (jury was not bound to credit party's argument); <u>People</u> v. <u>Asan</u>, 22 N.Y.2d 526, 529 (1968) (a jury may "accept portions of the defense and prosecution evidence or either of them"; consequently, it is of no moment to a court's decision whether to submit a lesser included offense that an acquittal may be the only permissible verdict if the jury credit's the accused's testimony); <u>O'Shea</u> v. <u>High Mark Development , LLC,</u> _ _ P.3d _, _, 2012 W.L. 1436898, 1436898*3 (Idaho April 26, 2012) ("a jury is not bound to consider only the arguments made by counsel").

The People also argue that the jury could not reasonably have convicted appellant of second-degree manslaughter while acquitting him of first-degree manslaughter (Respondent's Brief at 13-16, 18-19, 23-28). In particular, they claim that the medical evidence refuted appellant's pretrial statement about how he used his knife and proved that he intended only to cause serious physical injury to Ojeda (Respondent's Brief at 13-16, 18-19). But they are wrong on both counts. Viewed in the light most favorable to appellant, <u>Devonish</u>, 6 N.Y.3d at 728, there was a rational view of the evidence that appellant recklessly caused Ojeda's death and did not intend to seriously injure him, <u>People</u> v. <u>Van Norstand</u>, 85 N.Y.2d 131, 136 (1995). Whether or not the evidence might merely have favored a first-degree manslaughter conviction is immaterial. <u>Id.</u>; <u>People</u> v. <u>Ducasse</u>, 273 A.D.2d 399, 401 (2d Dept. 2000).

First, in appellant's oral and written statements to the police, he stated that, after he got "looks" from someone at the bar, he was met with hostile comments, then felt "grabbing and punching," so he "started swinging at the crowd" with his knife (Darino: 366, 371; People's Ex. 10). He also denied knowing "that he actually hit or hurt anyone" (Darino: 366-67, 371; People's Ex. 10). He explained that he produced the knife in self-defense, in response to the punching and grabbing and because the crowd in the bar "rose," continuing, "I was just scared. . . . I really didn't mean this to go down this way. I'm very sorry (Darino: 367-71; People's Ex. 10) (emphasis added). These statements allowed the jury to reasonably infer that appellant was reckless and did not intend to seriously injure Ojeda, and compelled the submission of second-degree manslaughter as a lesser included offense. See People v. McMillon, 31 A.D.3d 136, 141-42 (2d Dept. 2006) (following a dispute about a chain, defendant shot the decedent once, in the chest, from a distance of five feet, then told the police "he did not mean to kill or hurt anyone" and was afraid of the decedent; the evidence did not show defendant manifestly intended to kill); Ducasse, 273 A.D.2d at 400-01; Morel, 213 A.D.2d at 497-98 (there was a reasonable view of the evidence that defendant acted recklessly and without intent to seriously injure where, following an altercation he provoked, he stabbed the victim in the stomach with a three-to-five-inch blade and testified that he "never meant to hurt" the man).

The People argue that the medical evidence was inconsistent with "swinging the knife indiscriminately," thereby eliminating any reasonable view that appellant was merely reckless (Respondent's Brief at 15). But the medical examiner did not testify that Ojeda's injuries were inconsistent with a "swinging" of the knife, the term appellant used in his oral and written statements. Rather, he testified that Ojeda's wounds were inconsistent with "waving" the knife, a term the prosecutor used in his question to the medical examiner, and must have been caused by either a punching or stabbing motion (Frederick: 71-72, 76-77, 84). And, contrary to the People's claim, that the wounds were at an acute angle was not inconsistent with a defensive or, at least, indiscriminate "swinging" of the knife (Darino: 367-71; People's Ex. 10).

Furthermore, even though Ojeda was a slight man who was about 5'5" tall and weighed only about 118 pounds (Frederick: 70), only one of his wounds was deep; the other two, to his shoulder were, as the People remark, "shallow" (Respondent's Brief at 6), penetrating only his skin and muscle, not any organs (Frederick: 71-72). And, although the medical examiner testified that the wounds must have been caused by a "stab[bing]," or perhaps a punching motion, rather than a "waving" of the knife, he never stated that the wounds required significant force (Frederick: 76-77). Finally, Ojeda's chest wound was the only one that penetrated any organ and it was the only one that was fatal; and even that wound did not cause Ojeda to die immediately (Frederick: 75-76). Thus, the medical evidence did not ineluctably

6

demonstrate a manifest intent to kill or seriously injure that would have prevented a jury from rationally concluding that appellant lacked an intent to do either.

In any event, in determining whether a jury could have rationally decided that appellant was not guilty of first-degree manslaughter, one cannot not narrowly look at the medical evidence alone;  rather that critical determination must be based on the whole record, People v. Butler, 84 N.Y.2d 627, 632 (1984).  Thus, a single wound to a vital organ would not invariably preclude a rational jury from finding that the defendant is not guilty of first-degree manslaughter but guilty of second-degree manslaughter.  See People v. Daniel, 37 A.D.3d 731 (2d Dept. 2006) (second-degree manslaughter should have been submitted);  Appellant's Brief, People v. Daniel, 2006 W.L. 4539777 (2d Dept. March 10, 2006), Docket No. 2005-02513 (defendant discharged a gunshot into victim's stomach following an angry confrontation );  Morel, 213 A.D.2d at 497-98 (there was a reasonable view of the evidence that defendant acted recklessly and without an intent to cause serious physical injury where, following an altercation he provoked, he stabbed the victim in the stomach with a three-to-five-inch blade).  See also People v. Boyce, 36 A.D.3d 711, 712-13 (2d Dept. 2007) (evidence that defendant committed intentional acts, stabbed victim once in the back, and beat and strangled her did not establish a manifest intent to kill or preclude a jury finding of recklessness);  People v. Rodriguez, 33 A.D.3d 730, 731-32 (2d Dept. 2006) (that the evidence supported the view that the defendant

7

intentionally stabbed the deceased three times proved only that defendant's act was volitional; it did not prove, as a matter of law, that defendant's intent was to kill the deceased); People v. Atkinson, 21 A.D.3d 145 (2d Dept. 2005), modified, 7 N.Y.3d 765 (2006) (following a dispute over a drug sale, defendant fatally shot the victim in the neck from four to five feet away; first- and second-degree manslaughter were properly submitted as lesser included offenses to intentional murder). Cf. People v. Stanford, 87 A.D.3d 1367, 1368 (4th Dept. 2011) (no reasonable view of the evidence that defendant did not act with at least intent to cause serious physical injury; he admitted, multiple times, intentionally stabbing the victim four times in her neck, one of the four stab wounds was very deep, and her major blood vessels were severed) People v. Lora, 85 A.D.3d 487 (1st Dept. 2011) (when defendant fired four gunshots at close range in 1.5 seconds or less and admitted intentional conduct, intent to cause at least serious physical injury was manifest and second-degree manslaughter should not have been submitted as a lesser included offense); People v. Cesario, 71 A.D.3d 587, 587 (1st Dept. 2010) (during a dispute, defendant left to retrieve a pistol, returned, squeezed the trigger nine times, and shot one victim six times and another one three times; there was no reasonable view of the evidence that defendant acted with anything less than an intent to seriously injure).

On the contrary, the balance of the record, which included the testimony of appellant's brother, suggested that appellant actions were defensive but reckless and

8

not necessarily designed to kill or cause serious physical injury. Julio Rivera's testimony, in particular, showed that appellant did whatever he did to Ojeda only after things started to heat up between appellant's group, on the one hand, and Ojeda and his friends on the other, and Ojeda and several of his friends began cursing and ominously started to surround appellant, made "hand gestures," got in appellant's face, things started "getting out of hand," and Solomon punched appellant (Julio R.: 467-68, 470-71, 493-505, 507, 509-10; E. Rivera: 547, 560, 564-65, 619-20, 623-27). And Carrasquillo, one of Ojeda's friends, testified that he saw a "commotion" and Solomon, yet another of Ojeda's friends was "in the middle" of it (Carrasquillo: 294-95, 302, 305).

The People additionally contend that there was insufficient evidence of intoxication to justify submitting reckless manslaughter to the jury (Respondent's Brief at 24-27). But the court ruled that an intoxication charge was warranted and issued one without objection from the People. Because nisi prius ruled in favor of appellant, the ruling is beyond this Court's power of review. See P.L. §470.15(1) (intermediate appellate court may review any question of law involving an error "which may have adversely affected the appellant"; emphasis added); People v. Yusuf, _ N.Y.3d _, 2012 W.L. 1946755 (May 31, 2012); People v. Concepcion, 17 N.Y.3d 192, 195 (2011); People v. LaFontaine, 92 N.Y.2d 470 (1998); People v. Romero, 91 N.Y.2d 750 (1998); People v. Goodfriend, 64 N.Y.2d 695 (1984). As

9

well, the People's failure to protest the intoxication charge renders their current claim unpreserved.  See People v. Jamison, 87 N.Y.2d 1048 (1996);  People v. Luperon, 85 N.Y.2d 71, 71-78 (1995);  People v. Bolden, 81 N.Y.2d 146, 155-56 (1993);  People v. Babbs, 232 A.D.2d 496 (2d Dept. 1996).

In any event, considered separately or in conjunction with the other record evidence, the evidence of intoxication was sufficient to allow the jury to conclude that appellant could not and did not form an intent to kill or seriously injure.  First, a charge on intoxication is warranted if there is sufficient evidence of intoxication in the record for a reasonable juror to entertain a doubt as to the defendant's intent on that basis.  The charge may also be warranted

> if the record contains evidence of the recent use of intoxicants of such nature or quantity to support the inference that their ingestion was sufficient to affect defendant's ability to form the necessary criminal intent. People v. Rodriguez, 76 N.Y.2d 918, 920 (1990).

Accord People v. Brantley, 209 A.D.2d 272, 273 (1ˢᵗ Dept. 1994).  Contrary to the People's claim (Respondent's Brief at 24-25), there was ample evidence to support the court's decision to issue an intoxication charge.  Appellant testified, without contradiction, that he was drinking before he arrived at the bar and he and his brother, Julio Rivera, testified that he had several drinks at the bar (Julio R.:  462, 472-73, 501;  E. Rivera:  537-39, 541, 589-90).  See People v. Costello, 73 A.D.2d 901 (1ˢᵗ Dept. 1980) (evidence was sufficient to support an intoxication charge where

the testimony showed that the male participants at a party that included defendant had consumed large amounts of alcohol, even though "the evidence of the specific intake of alcohol by defendant was meager").

Furthermore, although the issuance of an intoxication charge does not "inexorably" command the issuance of instructions on lesser included assaultive offenses regardless of the other evidence, those two sets of instructions are often "interwined." Butler, 84 N.Y.2d at 630-32. Lesser included offense instructions will invariably be required in a "great many" of the cases in which an intoxication charge is given. Id. at 631. These instructions are "usually," but not invariably, considered and given "in tandem." Id. at 632. Occasionally, a lesser included offense should not be charged despite the issuance of an intoxication charge where the victim's wounds are of such number, brutality, and invariably fatal effect as to permit only a finding of intent consistent with the greater offense or no mens rea at all. See id. (defendant inflicted 34 stab wounds, 9 of which were fatal); People v. Spina, 275 A.D.2d 902, 904 (4th Dept. 2000) (number of injuries was indicative of a brutality inconsistent with recklessness); People v. Vega, 68 A.D.3d 665 (1st Dept. 2009) (49 stab wounds, mostly to victim's neck and chest; 3 severed carotid artery and jugular vein and others penetrated his heart, lungs, spleen, and liver); People v. Rivera, 2 A.D.3d 542, 543 (2d Dept. 2003) (the number of shots fired into victim's vital organs at close range as he tried to escape belied a view of the evidence consistent with

11

recklessness). This is not such a case.

The People also contend that the court's refusal to submit second-degree manslaughter was harmless, claiming that the evidence was overwhelming and, in any event, there was no substantial probability of a different outcome (Respondent's Brief at 19-23). But the People do not cite a single case dealing with the erroneous refusal to submit a lesser included offense.

In dealing with claims of this type of error, only limited forms of harmless error analysis have been recognized. Harmless error will be found where the jury has convicted the defendant of the greater offense despite the submission of the next lesser included offense. See, e.g., People v. Boettcher, 69 N.Y.2d 174, 180 (1987); People v. Richette, 33 N.Y.2d 42, 45-46 (1973); People v. Cephas, 91 A.D.3d 668, 669 (2d Dept. 2012); People v. Cordato, 85 A.D.3d 1304, 1307 (3d Dept. 2011). Some appellate courts have also found harmless error when the jury's verdict "itself [otherwise] implies that [any] error did not affect the result." People v. Gonzalez, 52 A.D.3d 1228, 1229 (4th Dept. 2008) (court's refusal to charge seventh-degree criminal possession of a controlled substance as a lesser included offense of third-degree possession was harmless, since, in addition to convicting defendant of third-degree possession, the jury convicted him of criminal sale of a controlled substance); People v. Ruiz, 223 A.D.2d 418, 419 (1st Dept. 1996) (same). Finally, harmless error may be found where the court erroneously refused to charge the lesser included

12

offense under one count but <u>did</u> charge it under another count. <u>See</u> <u>People</u> v. <u>Hendrie</u>, 24 A.D.3d 871, 874 (3d Dept. 2005) (court's error in refusing to charge second-degree manslaughter under first-degree murder count was harmless because it charged the lesser offense under the depraved indifference murder count); <u>People</u> v. <u>Doyle</u>, 3 A.D.3d 126, 128-30 (1st Dept. 2004) (same principle).

Appellant has found no New York authority sanctioning the harmless error analysis proposed by the People where the court erroneously refused to submit a lesser included offense and that analysis is inconsistent with the Legislature's intent in enacting the lesser included offense statute, C.P.L. §300.50(1). One of the purposes of the statute is to permit the jury to extend mercy to a defendant even though the evidence predominates in favor of guilt on the greater offense, provided that there is a rational evidentiary basis for doing that, and, therefore, the jury would not be made to speculate. <u>See</u> <u>People</u> v. <u>Mussenden</u>, 308 N.Y. 558, 562-63 (1955); <u>Doyle</u>, 3 A.D.3d at 129. The People's proposed analysis, however, would undermine that purpose by interfering with the mercy-dispensing power the statute authorizes.

\*       \*       \*

For the reasons set forth and in appellant's initial brief, the court erred and denied appellant due process in refusing to submit second-degree manslaughter as a lesser included offense of second-degree murder. U.S. Const., Amend. XIV; N.Y. Const., Art. I, §6; C.P.L. §300.50(1). Appellant's conviction should be reversed,

People v. Brockett, 74 A.D.3d 1218, 1220 (2d Dept. 2010) (reversing on the strength

of unpreserved claim that the court erred in failing to submit a lesser included

offense), and the indictment should be dismissed with leave to the People to seek

to reindict him for an appropriate offense, but not second-degree murder. See

People v. Beslanovics, 57 N.Y.2d 726 (1982).


## CONCLUSION

FOR THE REASONS SET FORTH HERE AND IN
HIS INITIAL BRIEF, APPELLANT'S CONVICTION
SHOULD    BE      REVERSED    AND    THE
INDICTMENT SHOULD BE DISMISSED, WITH
LEAVE   TO   THE   PEOPLE   TO   SEEK   A
REINDICTMENT (REPLY BRIEF AND POINT I,
INITIAL BRIEF). ALTERNATIVELY, THE COURT
SHOULD REDUCE APPELLANT'S PRISON TERM
(POINT II, INITIAL BRIEF).


Respectfully Submitted,

LYNN W. L. FAHEY
Attorney for Defendant-Appellant

WARREN S. LANDAU
Of Counsel
June 2012

14

SUPREME COURT OF THE STATE OF NEW YORK
APPELLATE DIVISION: SECOND DEPARTMENT
---------------------------------------------------------------X

THE PEOPLE OF THE STATE OF NEW YORK,:

|  |  |  |
|---|---|---|
| Respondent, | : | CERTIFICATION PURSUANT TO 22 |
| -against- | : | N.Y.C.R.R. §670.10.3(f) |

ENRIQUE RIVERA,                                           :

Defendant-Appellant.          :

---------------------------------------------------------------X

WARREN S. LANDAU, an attorney admitted to practice before the Courts of this State, certifies, pursuant to 22 N.Y.C.R.R. §670.10.3(f) that the foregoing brief was prepared on a computer. A proportionally spaced typeface was used, as follows:

Name of typeface: Garamond    Point Size: 14 (12 for footnotes)
Line spacing: Double (single for footnotes and headings)

The total number of words in the brief, inclusive of point headings and footnotes and exclusive of pages containing the table of contents, table of citations, proof of service, certificate of compliance, or any authorized addendum containing statutes, rules, regulations, etc., is 3,282.

Dated:     June 15, 2012
               New York, NY

_Warren S. Landau_
WARREN S. LANDAU

15